**In the United States District Court
for the District of Kansas**

———————

Case No. 5:21-cr-40088-TC-1

———————

UNITED STATES OF AMERICA,

*Plaintiff*

v.

STEVEN E. SPRADLEY,

*Defendant*

———————

**MEMORANDUM AND ORDER**

Defendant Steven Spradley is charged with attempted transportation of a minor with intent to engage in criminal sexual activity, 18 U.S.C. § 2423(a) and (e), and travel with the intent to engage in illicit sexual conduct, 18 U.S.C. § 2423(b). Doc. 1 at 1–2. Spradley moves to dismiss the indictment for outrageous government conduct, Doc. 33, and selective prosecution, Doc. 34. For the following reasons, these motions are denied.

**I**

**A**

**1.** Outrageous government conduct can violate a defendant's constitutional right to due process and require dismissal of the charges against him. *United States v. Leal*, 32 F.4th 888, 895 (10th Cir. 2022). The Supreme Court first suggested this possible defense in *United States v. Russell* when it noted that it "may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." 411 U.S. 423, 431–32 (1973). The Tenth Circuit has since recognized outrageous government conduct as an affirmative defense, permitting defendants to move for dismissal of charges or reversal of conviction

1

on that basis. *United States v. Doe*, 698 F.3d 1284, 1293 (10th Cir. 2012); *but see United States v. Dyke*, 718 F.3d 1282, 1287 (10th Cir. 2013) (noting that even though the Tenth Circuit still recognizes the outrageous government conduct defense, it has not found "a single case where the defense applies").

The defendant bears the burden of proving the government's conduct was outrageous. *Leal*, 32 F.4th at 896. The defendant must show that the conduct was "'shocking' and 'clearly intolerable' in light of the totality of the circumstances." *Id.* at 895 (quoting *United States v. Mosley*, 965 F.2d 906, 910 (10th Cir. 1992)). To meet that high threshold, the government must have either been excessively involved in creating the crime or significantly coerced the defendant to commit the crime. *Id.* at 896.

Although the Tenth Circuit has not formulated a specific rule to determine what level of government involvement is outrageous, it has provided "some general guidelines." *Mosley*, 965 F.2d at 911. The government must have "essentially generate[d] new crime for the purpose of prosecuting it or induce[d] a defendant to become involved for the first time in certain criminal activity . . . ." *Leal*, 32 F.4th at 896 (quoting *Mosley*, 965 F.2d at 911). That said, as long as the government does not "engineer and direct the criminal enterprise from start to finish," it may suggest illegal activity, "induce a defendant to repeat or continue a crime," or "induce [a defendant] to expand or extend previous criminal activity." *Id.* (quoting *Mosley*, 965 F.2d at 911) (quotations omitted).

**2.** Selective prosecution by the United States violates the defendant's due process right guaranteed by the Fifth Amendment. *United States v. Deberry*, 430 F.3d 1294, 1299 (10th Cir. 2005) (citing *Wayte v. United States*, 470 U.S. 598, 608 n. 9 (1985)). The government selectively prosecutes a defendant when its choice to prosecute was "invidious or in bad faith and was based on impermissible considerations such as . . . the desire to prevent the exercise of constitutional rights." *United States v. Davis*, 339 F.3d 1223, 1228 n.3 (10th Cir. 2003) (quoting *United States v. Salazar*, 720 F.2d 1482, 1487 (10th Cir. 1983)).

The defendant bears the burden of showing selective prosecution. *United States v. Griffith*, 928 F.3d 855, 866 (10th Cir. 2019). The standard is "a demanding one" and requires the claimant to "demonstrate that the federal prosecutorial policy had a discriminatory effect

and that it was motivated by a discriminatory purpose." *United States v. Glaub*, 910 F.3d 1334, 1340 (10th Cir. 2018) (quoting *United States v. Armstrong*, 517 U.S. 456, 463, 465 (1996)).

To show the prosecution had a discriminatory effect, the defendant must demonstrate that similarly situated individuals were not prosecuted. *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1265 (10th Cir. 2006). Individuals are similarly situated when no legitimate factors distinguish them enough to justify the difference in prosecution. *Deberry*, 430 F.3d at 1301. The defendant must do more than identify similarities he shares with other individuals, *United States v. DeChristopher*, 695 F.3d 1082, 1096–97 (10th Cir. 2012), or simply assert that other similar individuals were not prosecuted, *Griffith*, 928 F.3d at 867. Instead, a defendant must show that the only distinguishing features between them would be unconstitutional bases for differential treatment. *DeChristopher*, 695 F.3d at 1097.

The defendant must also demonstrate that "discriminatory intent was a 'motivating factor in the decision' to enforce the criminal law against the defendant." *Alcaraz-Arellano*, 441 F.3d at 1264 (quoting *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003)). The government must have chosen to prosecute "at least in part 'because of,' not merely 'in spite of,' [that decision's] adverse effects upon an identifiable group." *Wayte v. United States*, 470 U.S. 598, 608 (1985) (quoting *Pers. Adm'r Of Mass. v. Feeney*, 422 U.S. 256, 279 (1979)). The defendant may show this by either direct or circumstantial evidence. *Alcaraz-Arellano*, 441 F.3d at 1264.

**B**

On June 29, 2021, an investigator with the Osage County, Kansas Sherriff's office posted a fictious request for help on Craigslist's Topeka, Kansas, general community page. Doc. 37 at ¶ 1. The ad stated, "Need help? Needing to make some money. Recently graduated and looking to make money for a new ride to attend cosmetology school." Doc. 37-1. The goal of this post was to identify those involved in online sexual solicitation and trafficking of minors. Doc. 37 at 1–2.

Steven Spradley, of Kansas City, Missouri, replied to the ad via email two hours later. His email explicitly proposed commercial sexual activity: "I'll give you $500 to spend the weekend trading orgasms with me." Doc 37-2 at 1. The poster—whom the investigator named

Ashlee—indicated interest, then Spradley described himself and his plans for their weekend together. *Id.* Ashlee's second message stated, "I'm 17 is that a problem?" *Id.* at 2. Spradley responded with three photos of himself, hoping that these would not "scare her off." *Id.* at 2–5. Thereafter, they began to communicate over text messaging. Doc. 37-2 at 7.

Spradley and Ashlee texted over three days, from June 29 until July 1. Doc. 37-3. Each day, Spradley began the texting exchange. *See id.* at 1, 5, 9. In response to Spradley's request, Ashlee sent Spradley a photograph purporting to be of her, but it was actually a female deputy with the Osage County Sheriff's Office. *Id.* at 1; Doc. 37 at 3 n.2. Spradley offered to pick up Ashlee near her home in Kansas and take her back to Missouri for the July 4th weekend. *Id.* at 2. Ashlee responded that she could leave on July 1 after telling her mother she would be "staying with a friend for the 4th," to which Spradley said, "Perfect!!!!" *Id.* Spradley continued to mention planning sexual activity, *see, e.g.*, Doc. 37-3 at 3, and confirmed that he planned to pay Ashlee $500 for their weekend encounter, *id.* at 8. On July 1, Spradley drove to the agreed-upon location in Carbondale, Kansas, to meet Ashlee. *Id.* at 10–11. When he saw the female officer posing as Ashlee, Spradley walked toward her to help her with her bags as they previously discussed. *See id.* at 11. At that point, other officers from the Osage County Sherriff's Office took him into custody. *See* Doc. 33 at 6; Doc. 37 at 3.

Spradley was charged in July 2021 in Kansas state court with multiple felony offenses. Doc. 34 at 2; Doc. 34-1 at 1–2. In August, the Osage County Sheriff's Office contacted FBI Task Force Officer Broxterman about presenting Spradley's case to the Government for federal prosecution. Doc. 38 at 1–2. On August 19, the Government asked the Osage County Attorney for details about any plea deals it may have offered Spradley. *Id.* at 2. The County Attorney responded with the details of a plea offer it had extended Spradley, which included a recommendation for probation as well as lifetime sex offender registration, sex offender evaluation, alcohol and drug evaluation, and loss of social media and Craigslist accounts during probation. Doc. 38-1 at 1–2; *see also* Doc. 34-2 at 1. Spradley claims his state defense attorney told him that the federal government would not prosecute him if he accepted the plea. Doc. 34 at 2. Nevertheless, Spradley rejected the County's offer. *Id.*

4

On August 23, the Government told the Osage County Attorney that it planned to pursue a federal indictment against Spradley. Doc. 38 at 2. At that time, the Government knew Spradley had received a plea offer, *see* Doc. 38-1 at 1–2, but claims it did not know Spradley had rejected it, Doc. 38 at 2–3. The grand jury returned a two-count indictment on September 15, following which the County dismissed Spradley's state charges. *Id.* at 3.

During that same time period in 2021, five similar Kansas state cases in Osage County were resolved via plea agreements. Doc. 34 at 3–5; Doc. 38 at 3. According to the Government, the County prosecuted these cases itself instead of presenting them to the U.S. Attorney due to their "intrastate nature." Doc. 38 at 4. Two other cases are currently pending in state court which have not been filed in federal court. Doc. 34 at 5–6. Another similar Osage County case, in which the subject attempted to transport a purported minor across state lines, was presented to the federal government, but charges have not been filed. Doc. 38 at 4.

On September 30, 2022, Spradley moved to dismiss the federal charges against him due to outrageous government conduct, Doc. 33, and selective prosecution, Doc. 34. A hearing on those motions was held on December 1. Doc. 44.

## II

Spradley's motions to dismiss are denied. He has failed to show that the investigatory conduct was outrageous because the government was not excessively involved in the creation of the alleged crimes. And he has not proven either element of selective prosecution.

## A

Spradley claims that the government's conduct in this case was outrageous and warrants dismissal. Doc. 33 at 1. According to him, the Osage County Sherriff's post described a recent graduate needing money to travel to cosmetology school. *Id.* at 1–2, 13. It then changed the decoy's age after Spradley had committed the solicitation offense. *Id.* at 13. Furthermore, when law enforcement began to pursue him online, it had no evidence Spradley was predisposed to sexual activity involving minors. *Id.* From the moment of first contact, he claims, law enforcement directed the process, from arranging the

5

transportation across state lines to discussing money in return for sex. *Id.* He also argues that the officer turned a state-level misdemeanor—solicitation for sexual activity under K.S.A. § 21-6419—into a federal offense that carries a mandatory minimum sentence of ten years' imprisonment. *Id.* at 14. Spradley claims these facts show the government "used deception and confusing circumstances to create the required intent for wrongful conduct," *id.* at 18, and its involvement was therefore so extensive as to be outrageous, *id.* at 13.

To succeed on an outrageous government conduct defense, a defendant must show "either 'excessive government involvement in the creation of the crime, or . . . significant governmental coercion to induce the crime.'" *United States v. Wagner*, 951 F.3d 1232, 1253 (10th Cir. 2020) (quoting *United States v. Dyke*, 718 F.3d 1282, 1288 (10th Cir. 2013)). Spradley does not claim he was coerced; he only claims the government was excessively involved in creating the charged crimes. *See* Doc. 33 at 13. "Excessive government involvement occurs if the government engineers and directs the criminal enterprise from start to finish." *Wagner*, 951 F.3d at 1253 (citation omitted).

Spradley has not shown that the government was excessively involved in creating the crimes charged in the indictment. To begin with, the advertisement did not suggest commercial sex work. *See* Doc. 37-1. Rather, Spradley's response to the advertisement proposed paying for sexual activity. Doc. 37-2 at 1. And the Osage County investigator never stated in its Craigslist advertisement that Ashlee was an adult, *see* Doc. 37-1, and it revealed her age in its second response email, *see* Doc. 37-2 at 2. Thereafter, the government did not unilaterally direct the conversation—Spradley continued the conversation after learning Ashlee was only 17. *See id.* Each day, Spradley was the one to initiate the text conversation. *See* Doc. 37-3 at 1, 5, 9. Although Ashlee suggested that he "swing by," Spradley offered to "pick [her] up and have [her] spend the weekend with [him]" without retracting his offer to pay her $500 for sex. *Id.* at 2. He also continued to voice his intent to have sex with Ashlee. *See, e.g., id.* at 3 ("It's not just about the sex although . . . . YEAH BAYBEEEE!!!"). Finally, Spradley drove from Kansas City, Missouri, to Carbondale, Kansas, to pick Ashlee up. *Id.* at 10–11; Doc. 33 at 6. And as Officer Robert Brenner testified at the motions hearing, when Spradley saw the female officer acting as Ashlee, he approached her to help her load her bags into his car. *See* Doc. 37-3 at 11. In light of this course of events, Spradley has not shown how the government

"engineer[ed] and directed the criminal enterprise from start to finish." *United States v. Leal*, 32 F.4th 888, 896 (10th Cir. 2022) (quoting *United States v. Mosley*, 965 F.2d 906, 911 (10th Cir. 1992)).

And Spradley's argument that the investigators had no evidence of predisposition, Doc. 33 at 13, is not dispositive. While "predisposition is a reasonable consideration" when weighing an outrageous government conduct defense, it must be considered alongside the parties' conduct in the totality of the circumstances. *Dyke*, 718 F.3d 1282 at 1288–89. Sting operations like this "present unique questions relating to suspect culpability, particularly regarding the question of intent." *Quinn v. Young*, 780 F.3d 998, 1008 (10th Cir. 2015). But government sting operations have regularly been approved as not outrageous. *See Dyke*, 718 F.3d at 1289–90 (collecting cases). Indeed, the government may use undercover investigators to build a case against a defendant even if that defendant has no criminal history. *Id.* at 1289 (citing *United States v. Sandia*, 188 F.3d 1215, 1219–20 (10th Cir. 1999)). So even though Spradley claims (and the Government does not contradict) that the investigators had no evidence of his predisposition to commit the crimes he is charged with, that is merely one element that must be considered among the totality of the circumstances. *Id.* Spradley's actions following first contact show that he participated "eagerly and actively . . . in the *current* crime charged." *Id.* After learning Ashlee was a minor, he proposed spending the weekend together, he continued to mention sexual activity, he offered to meet Ashlee in Kansas, and he drove from his home in Kansas City, Missouri, to Carbondale, Kansas. Spradley's lack of predisposition alone does not make the sting outrageous.

Nor does it make a difference that Spradley may only have committed a misdemeanor before investigators indicated Ashlee was under 18. *Contra* Doc. 33 at 14. Spradley claims that the government "creat[ed] . . . the other elements" of the crimes he is now charged with, with the result that he "is facing an offense with a mandatory-minimum sentence of 10 years' imprisonment." *Id.* He concludes that because he was not predisposed to commit this kind of crime, this sort of "bait-and-switch" shows that the "police over-involvement in [this] crime has reached a 'demonstrable level of outrageousness.'" *Id.* at 14, 16 (citation omitted).

Tenth Circuit law undermines his claim. In *United States v. Robinson*, 993 F.3d 839 (10th Cir. 2021), the FBI listed a profile for "Brooke, age 18" on a website that required its participants to verify

7

they were 18 years or older. *Id.* at 843. After the defendant offered to pay her for prostitution, Brooke confessed "that she was only [17] years old and that her real name was Nikki." *Id.* The defendant nevertheless bought her a bus ticket from Colorado to meet him in California. *Id.* at 851. He was arrested when he arrived at a California bus terminal to meet her. *Id.* at 844. The defendant raised an outrageous government conduct defense, claiming that he believed he was talking with an adult when the conversation started, he did not solicit Nikki after learning she was a minor, and the government's behavior in decreasing Nikki's age was outrageous. *Id.* at 850. But the Tenth Circuit held that the claim for outrageous government conduct was meritless because the circumstances were not egregious. *Id.* at 850–51. Specifically, it noted that the defendant continued the conversation "long after Nikki revealed her true age . . ., pressed to meet her, and bought her a bus ticket to California from Denver." *Id.* at 851.

Spradley's situation is similar. The government may have implied Ashlee was 18 when it posted that she had graduated and was trying to raise money for cosmetology school, but that does not absolve Spradley. Minors can "easily join the site" and claim to be 18, so Spradley cannot "assume[] all users are at least [18] years old." *Robinson*, 993 F.3d at 850–51. He also learned that Ashlee was only 17 from her second email before they had exchanged either photographs or phone numbers. Doc. 37-2 at 1–2. And Spradley did not withdraw after learning Ashlee's age. Instead, he sent her photographs of himself, initiated conversation the two following mornings, and drove to Kansas to try to meet her. As in *Robinson*, the circumstances here are not egregious and do not merit dismissal.

Spradley's invitation to apply the Ninth Circuit's six-factor test for outrageous government conduct, as set forth in *United States v. Black*, 733 F.3d 294, 303 (9th Cir. 2013), is unconvincing. *Contra* Doc. 33 at 15–18. For one thing, the Tenth Circuit has considered the outrageous government conduct defense since *Black* and has not adopted that test. *See, e.g.*, *Leal*, 32 F.4th at 895–96 (weighing the government's conduct "in light of the totality of the circumstances"). But even if the *Black* test applied, the result would be no different, at least in this case. The Ninth Circuit noted that the analysis still centers on "the totality of the circumstances," and the factors merely "help focus [the court's] analysis." *Black*, 733 F.3d at 304. Moreover, the standard for outrageous government conduct under the *Black* test remains "extremely high." *United States v. Mohamud*, 843 F.3d 420 (9th

Cir. 2016). Because Spradley has not demonstrated the Government's conduct was outrageous under the totality of the circumstances, his motion is denied.

## B

Spradley next argues that the indictment against him should be dismissed due to selective prosecution. Doc. 34. He claims that "he was selectively prosecuted in federal court based on the assertion of his constitutional right to a jury trial in state court." Doc. 34 at 6. Dismissal due to selective prosecution requires the defendant to "demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *United States v. Griffith*, 928 F.3d 855, 866 (10th Cir. 2019).[1]

Spradley has failed to show discriminatory effect. To demonstrate discriminatory effect, he must prove that there are no "distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to" other similarly situated individuals. *DeChristopher*, 695 F.3d at 1097 (quoting *United States v. Deberry*, 430 F.3d 1294, 1301 (10th Cir. 2005)). Mere similarities are insufficient. *Id.* at 1096–97.

In support of his claim, Spradley has identified seven other individuals who were prosecuted as part of sting operations in 2021 for soliciting law-enforcement decoys posing as minors. Doc. 34 at 9. He alleges the only difference between his case and the others is that he did not accept the state's plea agreement. *Id.* at 10. But Spradley is also the only defendant who allegedly tried to transport a minor across state lines, and his interstate travel changed the nature of his activity. Only one other defendant appears to have traveled between states as part of Osage County's operation, and Spradley has not shown that he has been treated differently from that defendant. Indeed, the Government alleges it is only aware of that case because Osage County officials presented it to the U.S. Attorney's office, just

---

[1] Spradley also requested discovery related to his selective prosecution claim. Doc. 34 at 10. That request is denied because, as explained below, Spradley has failed to make "'a credible showing' of both discriminatory effect and discriminatory intent." *United States v. DeChristopher*, 695 F.3d 1082, 1097 (10th Cir. 2012) (quoting *United States v. Armstrong*, 517 U.S. 456, 465 (1996)).

as they did Spradley's. Doc. 38 at 4 & n.5 (explaining that prosecution is being actively investigated for prosecution). The Government claims it was unaware of any other cases, so it could not have intentionally selected Spradley from among them. *Id.* at 9. As for the statute under which Spradley claims the Government could have charged the other defendants—18 U.S.C. § 2422(b)—the Government has not charged Spradley under that statute either. Spradley has failed to prove that the prosecution had a discriminatory effect.

Likewise, Spradley has not shown the Government was motivated by a discriminatory purpose. To prove discriminatory purpose, Spradley must demonstrate that the Government's decision to prosecute him was motivated, at least in part, by an intent to discriminate against him for exercising a constitutional right. *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006). The Government claims it decided to prosecute Spradley based on "the strength of the evidence against him and the need for appropriate consequences." Doc. 38 at 9. It claims it did not know that Spradley asserted his right to jury trial in state court until Spradley filed this motion. *Id.* Spradley has presented no evidence to the contrary. There is no evidence that the Government consulted Osage County's prosecutor beyond requesting details of the proposed plea agreement, nor that it received any indication that Spradley rejected the plea deal.

### III

For the reasons set forth above, Spradley's motion to dismiss for outrageous government conduct, Doc. 33, is DENIED. Spradley's motion to dismiss for selective prosecution, Doc. 34, is DENIED.

It is so ordered.

Date: December 16, 2022        s/ Toby Crouse
                               Toby Crouse
                               United States District Judge